UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

IN RE:                                                    BCN#: 22-50230
PHYLLIS L MILLER                                          Chapter: 13

_____ Debtor _____
PHH Mortgage Corporation
or present noteholder,

                                                          MOTION FOR ORDER GRANTING RELIEF
        Movant/Secured Creditor,                         FROM AUTOMATIC STAY
v.
PHYLLIS L MILLER
        Debtor
and
ANGELA M. SCOLFORO
        Trustee
        Respondents

        PHH Mortgage Corporation, and/or present noteholder, (Movant herein), alleges as

follows:

        1.      The Bankruptcy Court has jurisdiction over this contested matter pursuant to 28

U.S.C. §157 and §1334; 11 U.S.C. §362.

        2.      The above named Debtor filed a Chapter 13 Petition in Bankruptcy with this Court

on June 1, 2022.

        3.      Angela M. Scolforo, Trustee, has been appointed by this Court as the Chapter 13

Trustee in this instant Bankruptcy proceeding.

        4.      Movant is the current payee of a promissory note secured by a deed of trust upon a

parcel of real property with the address of 3520 Cold Springs Road, Greenville, VA 24440 and

William M. Savage, Esquire
VSB #26155
Gregory N. Britto, Esquire
VSB #23746
Bryce Robertson, Esquire
VSB #86008
LOGS Legal Group LLP
10021 Balls Ford Road, Suite 200
Manassas, VA 20109
(703) 449-5800  22-290691

more particularly described in the Deed of Trust dated October 8, 2008 and recorded as Deed

Instrument Number 080009865, among the land records of the said city/county, as:

> **All that certain lot or parcel of land, together with all buildings and improvements thereon and all rights, privileges and appurtenances thereunto belonging, or in anywise appertaining, lying and being in the Riverheads District of Augusta County, Virginia, described and designated as LOT 1 containing 0.836 acre as more particularly shown on "Plat of a Division of the David Michael Johnson Property, Riverheads Dist., Augusta Co., VA.," dated October 24, 2007, made by EGS & Associates, Inc., recorded in the Clerk's Office of the Circuit Court of Augusta County, Virginia, as Instrument No. 070014726;**

5. Movant is informed and believes and, based upon such information and belief, alleges that title to the subject Property is currently vested in the name of the Debtor.

6. The Debtor is in default with regard to payments which have become due under the terms of the aforementioned note and deed of trust since the filing of the Chapter 13 Petition. As of April 19, 2023, the Debtor is due for:

- o 3 post-petition monthly payments from February 2023 through April 2023 of $514.16 each which were to be paid directly to Movant;
- o In addition to the post-petition default listed above PHH Mortgage Corporation has also incurred additional fees for drafting and filing the Motion for Relief in the amounts of $1,050.00 and $188.00 and those are also now due
- o Suspense Balance of                                             ($5.88)
- o Post-Petition Fees of                                           $1,500.00

7. As of April 19, 2023, the unpaid principal balance on the said note is $65,609.23.

8. Movant has elected to initiate foreclosure proceedings on the Property with respect to the subject Trust Deed but is prevented by the Automatic Stay from going forward with these proceedings.

9.    Continuation of the automatic stay of 11 U.S.C. § 362(a) will work real and irreparable harm and deprive the Movant of the adequate protection to which it is entitled under 11 U.S.C. § 362 due to the aforementioned facts.

WHEREFORE, Movant prays for an order granting relief from Automatic Stay, that the 14 day waiting period imposed by F.R.B.P. 4001(a)(3) be waived in this instant bankruptcy proceeding only, and for such other relief as the court may deem meet and proper.

Dated: _____April 28, 2023_____

LOGS Legal Group LLP
Attorneys for Movant

By: ___/s/ Bryce Robertson_____
William M. Savage, Esquire
VSB #26155
Gregory N. Britto, Esquire
VSB #23746
Bryce Robertson, Esquire
VSB #86008
LOGS LEGAL GROUP LLP
10021 Balls Ford Road, Suite 200
Manassas, VA 20109
(703) 449-5800
logsecf@logs.com    22-290691

## CERTIFICATE OF SERVICE

I hereby certify that on the __28th__ day of _____April_____, 2023 the following person(s) were served a copy of the foregoing in the manner described below:

Via CM/ECF Electronic Notice:

William Harville                                          Debtor's Attorney
327 W Main St
#3
Charlottesville, VA 22903

Angela M. Scolforo                                       Chapter 13 Trustee
123 East Main St
Suite 310
Charlottesville, VA 22902

Via First Class Mail, Postage Prepaid:

Phyllis L Miller                                         Debtor(s)
3520 Cold Springs Road
Greenville, VA 24440


                                    _____/s/ Bryce Robertson_____
                                    William M. Savage, Esquire
                                    VSB #26155
                                    Gregory N. Britto, Esquire
                                    VSB #23746
                                    Bryce Robertson, Esquire
                                    VSB #86008
                                    LOGS LEGAL GROUP LLP
                                    10021 Balls Ford Road, Suite 200
                                    Manassas, Virginia 20109
                                    (703) 449-5800
                                    logsecf@logs.com     22-290691


William M. Savage, Esquire
VSB #26155
Gregory N. Britto, Esquire
VSB #23746
Bryce Robertson, Esquire
VSB #86008
LOGS Legal Group LLP
10021 Balls Ford Road, Suite 200
Manassas, VA 20109
(703) 449-5800  22-290691

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

IN RE:                                    BCN#: 22-50230
PHYLLIS L MILLER                          Chapter: 13

_____Debtor_____
PHH Mortgage Corporation
or present noteholder,

      Movant/Secured Creditor,

v.
PHYLLIS L MILLER
      Debtor
and
ANGELA M. SCOLFORO
      Trustee
      Respondents

NOTICE IS HEREBY GIVEN THAT:

A hearing upon the captioned motion will be held at 9:30am on    June 15, 2023    , by video conference via Zoom.

Meeting ID:  160 369 2643

URL:  https://vawb-uscourts-gov.zoomgov.com/j/1603692643

I certify that I have this  28th  day of ____April____, 2023, electronically transmitted and/or mailed by first class mail, postage pre-paid, a true copy of the foregoing Notice to the following:

William Harville
327 W Main St
#3
Charlottesville, VA 22903

William M. Savage, Esquire
VSB #26155
Gregory N. Britto, Esquire
VSB #23746
Bryce Robertson, Esquire
VSB #86008
LOGS Legal Group LLP
10021 Balls Ford Road, Suite 200
Manassas, VA 20109
(703) 449-5800  22-290691

Angela M. Scolforo
123 East Main St
Suite 310
Charlottesville, VA 22902

Phyllis L Miller
3520 Cold Springs Road
Greenville, VA 24440

/s/ Bryce Robertson
William M. Savage, Esquire
VSB #26155
Gregory N. Britto, Esquire
VSB #23746
Bryce Robertson, Esquire
VSB #86008

**EXHIBIT**

**1**

PG0063 OCT -9 8

080009865

This instrument prepared by:   METROCITIES MORTGAGE LLC,
15301 VENTURA BLVD., STE D300, SHERMAN OAKS, CA 91403

After Recording Return To:

METROCITIES MORTGAGE, LLC
15301 VENTURA BLVD, SUITE D300
SHERMAN OAKS, CALIFORNIA 91403
Loan Number: ███████

PG0113 JUL 29 09

090008093

Tax Map Reference No.:

PIN: 089-83D

[Space Above This Line For Recording Data]

# DEED OF TRUST

FHA CASE NO.

███████████

This Deed of Trust is being re-recorded to attach the "Affixation Affidavit" and the "Real Property Limited Power of Attorney, not attached at the **MIN:** ███████████ initial time of recording.Original Deed of Trust recorded 10/9/08 Instr#080009865.

THIS DEED OF TRUST ("Security Instrument") is made on   OCTOBER 8, 2008
The grantor is   PHYLLIS L. MILLER

("Borrower").

The trustee is   RHEA & MILLER, P.C

a resident of the Commonwealth of Virginia, whose full residence or business address is   11 TERRY COURT, STAUNTON, VIRGINIA 24401
and

a resident of the Commonwealth of Virginia, whose full residence or business address is

trustees (any one of whom may act and who are referred to as "Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

METROCITIES MORTGAGE, LLC, A LIMITED LIABILITY COMPANY     ("Lender")
is organized and existing under the laws of   DELAWARE
and has an address of   15301 VENTURA BLVD, SUITE D300, SHERMAN OAKS,
CALIFORNIA 91403
Borrower owes Lender the principal sum of ONE HUNDRED FOUR THOUSAND NINE HUNDRED SIXTY-ONE AND 00/100             Dollars (U.S. $ 104,961.00       ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on NOVEMBER 1, 2038
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest,

DocMagic *eForms* 800-649-1362
www.docmagic.com

advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in
AUGUSTA                                          , Virginia:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF
A.P.N.: 089-83D

which has the address of                    3520 COLD SPRINGS ROAD
                                                 [Street]

GREENVILLE                     , Virginia          24440          ("Property Address"):
     [City]                                      [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary,

---

FHA VIRGINIA DEED OF TRUST - MERS
6/96                                   Page 2 of 8            DocMagic eForms 800-649-1362
                                                              www.docmagic.com

PG 0 1 1 5 JUL 29 8         PG 0 0 6 5 OCT -9 8

in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3.   Application of Payments.**  All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

**4.   Fire, Flood and Other Hazard Insurance.**  Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5.   Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating

FHA VIRGINIA DEED OF TRUST - MERS
6/96                                Page 3 of 8                    DocMagic eForms 800-649-1362
www.docmagic.com

PG 0 1 1 6  JUL 29 [?]        PG 0 0 6 6 OCT -9 [?]

circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6.   Condemnation.**   The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7.   Charges to Borrower and Protection of Lender's Rights in the Property.**   Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8.   Fees.**   Lender may collect fees and charges authorized by the Secretary.

**9.   Grounds for Acceleration of Debt.**

   **(a)   Default.**   Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

      (i)   Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

      (ii)   Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

FHA VIRGINIA DEED OF TRUST - MERS
6/96                                    Page 4 of 8                          DocMagic *eForms* 800-649-1362
                                                                             www.docmagic.com

PG 0 1 1 7  JUL 29 8        PG 0 0 6 7  OCT -9 8

**(b)  Sale Without Credit Approval.**  Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c)  No Waiver.**  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d)  Regulations of HUD Secretary.**  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e)  Mortgage Not Insured.**  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within  60 DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS                                      from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

  **10.  Reinstatement.**  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

  **11.  Borrower Not Released; Forbearance by Lender Not a Waiver.**  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

  **12.  Successors and Assigns Bound; Joint and Several Liability; Co-Signers.**  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

DocMagic eForms 800-649-1362
www.docmagic.com

PG 0 1 1 8  JUL 29 ⅏            PG 0 0 6 8  OCT -9 ⅏

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

FHA VIRGINIA DEED OF TRUST - MERS
6/96                                    Page 6 of 8                    *DocMagic eFRomm* 800-649-1362
                                                                    *www.docmagic.com*

PG0119 JUL 29 98          PG0069 OCT -9 98

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower (and the owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the Purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of   FIVE (5) % of the gross sale price and reasonable attorneys' fees; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Security Instrument; and (d) any excess to the person or persons legally entitled to it. Trustee shall not be required to take possession of the Property prior to the sale thereof or to deliver possession of the Property to the purchaser at the sale.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Identification of Note.** The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgement hereto.

**22. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☐ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☒ Other [Specify] | MANUFACTURED HOME RIDER, LIMITED POWER OF ATTY RIDER, AFFIXATION AFFIDAVIT |

**NOTICE**

**THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

FHA VIRGINIA DEED OF TRUST - MERS
6/96                    Page 7 of 8          DocMagic eForms 800-649-1362
www.docmagic.com

PG0120 JUL 29 08                    PG0070 OCT -9 08

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security
Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
PHYLLIS L. MILLER          -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                           -Borrower                                -Borrower

Witness:                                   Witness:

_____                  _____


——————————— [Space Below This Line For Acknowledgment] ———————————

State of Virginia
County of AUGUSTA _____

    The foregoing instrument was acknowledged before me this _8 October 2008_
by PHYLLIS L. MILLER _____

_____

He/She/They is/are personally known to me or has/have produced _drivers licence_

as identification.

                                          _____
                                          Notary Public Signature

                                          _Notary_
                                          Title

                                          _107753_
                                          Registration Number

                                          My commission expires the _4-30-2011_ day of

(Seal)

[Notary seal: PHILIP H. MILLER / NOTARY PUBLIC / COMMONWEALTH OF VIRGINIA / ID# 107753]

FHA VIRGINIA DEED OF TRUST - MERS
6/96                                Page 8 of 8                DocMagic eForms 800-649-1362
                                                                www.docmagic.com

PG 0 1 2 1 JUL 29 8          PG 0 0 7 4 OCT -9 8

Record and Return ☐ by Mail ☐ by Pickup to:

<u>METROCITIES MORTGAGE, LLC</u>
<u>15301 VENTURA BLVD, SUITE D300</u>
<u>SHERMAN OAKS, CALIFORNIA 91403</u>

Loan Number: ▉▉▉▉▉▉▉

# MANUFACTURED HOME RIDER
# TO SECURITY INSTRUMENT

This Rider is made this   8th day of   OCTOBER, 2008       , and is incorporated into and amends and supplements the Mortgage, Open-End Mortgage, Deed of Trust, or Credit Line Deed of Trust, Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to   METROCITIES MORTGAGE, LLC, A LIMITED LIABILITY COMPANY
("Lender") of the same date ("Note") and covering the Property described in the Security Instrument and located at:

     3520 COLD SPRINGS ROAD, GREENVILLE, VIRGINIA 24440

[Property Address]

Borrower and Lender agree that the Security Instrument is amended and supplemented to read as follows:

1. **Meaning of Some Words.** As used in this Rider, the term "Loan Documents" means the Note, the Security Instrument and any Construction Loan Agreement, and the term "Property," as that term is defined in the Security Instrument, includes the "Manufactured Home" described in Paragraph 3 of this Rider. All terms defined in the Note or the Security Instrument shall have the same meaning in this Rider.

2. **Purpose and Effect of Rider.** IF THERE IS A CONFLICT BETWEEN THE PROVISIONS IN THIS RIDER AND THOSE IN THE SECURITY INSTRUMENT, THE PROVISIONS IN THIS RIDER SHALL CONTROL. THE CONFLICTING PROVISIONS IN THE SECURITY INSTRUMENT WILL BE ELIMINATED OR MODIFIED AS MUCH AS IS NECESSARY TO MAKE ALL OF THE CONFLICTING TERMS AGREE WITH THIS RIDER.

DocMagic *eForms* 800-649-1362
www.docmagic.com

PG0122 JUL 29 8        PG0072 OCT-9 8

3. **Lender's Security Interest.** All of Borrower's obligations secured by the Security Instrument also shall be secured by the Manufactured Home:

| Used | 1984 | Colonial Homes, Inc. |
|------|------|----------------------|
| New/Used | Year | Manufacturer's Name |

| unknown | ████████████ | 23.8' X 40.2' |
|---------|--------------|---------------|
| Model Name or Model No. | Manufacturer's Serial No. | Length x Width |

| ████████ & ████████ | |
|---------|---|
| HUD Label Number(s): | Certificate of Title Number: |

4. **Affixation.** Borrower covenants and agrees:
   (a) to affix the Manufactured Home to a permanent foundation on the Property;
   (b) to comply with all Applicable Law regarding the affixation of the Manufactured Home to the Property;
   (c) upon Lender's request, to surrender the certificate of title to the Manufactured Home, if surrender is permitted by Applicable Law, and to obtain the requisite governmental approval and documentation necessary to classify the Manufactured Home as real property under Applicable Law;
   (d) that affixing the Manufactured Home to the Property does not violate any zoning laws or other local requirements applicable to the Property;
   (e) that the Manufactured Home will be, at all times and for all purposes, permanently affixed to and part of the Property.

5. **Charges; Liens.** Section 4, Paragraph 1 of the Security Instrument is amended to add a new third sentence to read:
   Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph and receipts evidencing the payments.

6. **Property Insurance.** Section 5, Paragraph 1 of the Security Instrument is amended to add a new second sentence to read:
   Whenever the Manufactured Home is transported on the highway, Borrower must have trip insurance.

7. **Notices.** The second sentence of Section 15 of the Security Instrument is amended by inserting the words "unless otherwise required by law" at the end.

8. **Additional Events of Default.** Borrower will be in default under the Security Instrument:
   (a) if any structure on the Property, including the Manufactured Home, shall be removed, demolished or substantially altered;
   (b) if Borrower fails to comply with any requirement of Applicable Law (Lender, however, may comply and add the expense to the principal balance Borrower owes to Lender); or
   (c) if Borrower grants or permits any lien on the Property other than Lender's lien, or liens for taxes and assessments that are not yet due and payable.

PG0123 JUL 29 03           PG0073 OCT -9 03

9. **Notice of Default.** If required by Applicable Law, before using a remedy, Lender will send Borrower any notice required by law, and wait for any cure period that the law may require for that remedy.

10. **Additional Rights of Lender in Event of Foreclosure and Sale.** In addition to those rights granted in the Note and Security Instrument, Lender shall have the following rights in the event Lender commences proceedings for the foreclosure and sale of the Property.

   (a) At Lender's option, to the extent permitted by Applicable Law, Lender may elect to treat the Manufactured Home as personal property ("Personal Property Collateral"). Lender may repossess peacefully from the place where the Personal Property Collateral is located without Borrower's permission. Lender also may require Borrower to make the Personal Property Collateral available to Lender at a place Lender designates that is reasonably convenient to Lender and Borrower. At Lender's option, to the extent permitted by Applicable Law, Lender may detach and remove Personal Property Collateral from the Property, or Lender may take possession of it and leave it on the Property. Borrower agrees to cooperate with Lender if Lender exercises these rights.

   (b) After Lender repossesses, Lender may sell the Personal Property Collateral and apply the sale proceeds to Lender's reasonable repossession, repair, storage, and sale expenses, and then toward any other amounts Borrower owes under the Loan Documents.

   (c) In the event of any foreclosure sale, whether made by Trustee, or under judgment of a court, all of the real and Personal Property Collateral may, at the option of Lender, be sold as a whole or in parcels. It shall not be necessary to have present at the place of such sale the Personal Property Collateral or any part thereof. Lender, as well as Trustee on Lender's behalf, shall have all the rights, remedies and recourse with respect to the Personal Property Collateral afforded to a "Secured Party" by Applicable Law in addition to, and not in limitation of, the other rights and recourse afforded Lender and/or Trustee under the Security Instrument.

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Rider.

_____
Borrower PHYLLIS L. MILLER

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower

_____
Borrower

PG 0124 JUL 29 ☐         PG 0074 OCT -9 ☐

STATE OF VIRGINIA           )
                            ) SS.
COUNTY OF AUGUSTA           )

I, the undersigned Notary Public, in and for the aforesaid State and County, do hereby certify that
PHYLLIS L. MILLER

Borrower(s), personally appeared before me in said County and acknowledged the within instrument to be
their act and deed. Given under my hand and seal this _8th_ day of _October 2008_ .

_____
Notary Public

State of _Virginia_

County of _Augusta_

(Seal)                          My Commission Expires: _4-30-2011_

Drafted By: <u>METROCITIES MORTGAGE</u> LLC

DocMagic ℯⓇ𝘍𝘰𝘳𝘮𝘴 800-649-1362
www.docmagic.com

PG 0 1 2 5 JUL 29 ☉      PG 0 0 7 5 OCT -9 ☉

**Schedule A**

**Description**
**Tax Map #89-83d**

**Phyllis L. Miller**
**3520 Cold Springs Road**
**Greenville, VA 24440**

**All that certain lot or parcel of land, together with all buildings and improvements thereon and all rights, privileges and appurtenances thereunto belonging, or in anywise appertaining, lying and being in the Riverheads District of Augusta County, Virginia, described and designated as LOT 1 containing 0.836 acre as more particularly shown on "Plat of a Division of the David Michael Johnson Property, Riverheads Dist., Augusta Co., VA.," dated October 24, 2007, made by EGS & Associates, Inc., recorded in the Clerk's Office of the Circuit Court of Augusta County, Virginia, as Instrument No. 070014726;**

INSTRUMENT #080009865
RECORDED IN THE CLERK'S OFFICE OF
AUGUSTA COUNTY ON
OCTOBER 9, 2008 AT 10:50AM

JOHN B. DAVIS, CLERK
RECORDED BY: APB

PG 0126 JUL 29 8

METROCITIES MORTGAGE, LLC
15301 VENTURA BLVD, SUITE D300,
SHERMAN OAKS, CALIFORNIA 91403

Loan Number: ▮▮▮▮▮▮
(To be recorded with Security Instrument)

# AFFIXATION AFFIDAVIT REGARDING MANUFACTURED (AND FACTORY BUILT) HOME

The State of  VIRGINIA                          )

County of  AUGUSTA                              )

Before me, the undersigned authority, on this day personally appeared  PHYLLIS L. MILLER

(Borrower(s)) and  METROCITIES MORTGAGE, LLC

known to me to be the person(s) whose name(s) is/are subscribed below, and who, being by me first duly sworn, did each on his/her oath state as follows:

## DESCRIPTION OF MANUFACTURED HOME

| Used | 1984 | Colonial Homes Inc |
|------|------|---------------------|
| New/Used | Year | Manufacturer's Name |

| Unknown | CHI 1467 A & B | 23.8' x 40.2' |
|---------|----------------|---------------|
| Model Name or Model No. | Manufacturer's Serial No. | Length x Width |

TEN070357 & TEN070358
HUD Label Number(s):                                          Certificate of Title Number:

## MANUFACTURED HOME LOCATION

3520 COLD SPRINGS ROAD                          AUGUSTA
Street                                          County

GREENVILLE                    VIRGINIA                    24440
City                          State                      Zip Code

PG0127 JUL 29 08

In addition to the covenants and agreements made in the Security Instrument, Borrower covenants and agrees as follows:

1. The manufactured home described above located at the address above is permanently affixed to a foundation and will assume the characteristic of site-built housing.

2. The wheels, axles, tow bar, or hitch were removed when said manufactured home was placed on the permanent site.

3. All foundations, both perimeter and piers for said manufactured home have footings that are located below the frost line or in compliance with local building codes or requirements.

4. If piers are used for said manufactured home, they will be placed where said home manufacturer recommends.

5. If state law so requires, anchors for said manufactured home have been provided.

6. The manufactured home is permanently connected to a septic or sewage system and other utilities such as electricity, water and natural gas.

7. No other lien or financing affects said manufactured home or real estate, other than those disclosed in writing to Lender.

8. The foundation system of the manufactured home has been designed by an engineer, if required by state or local building codes, to meet the soil conditions of the site.

9. Borrower(s) acknowledges his or her intent that said manufactured home will become immovable property and part of the real property securing the security instrument.

10. The Manufactured home will be assessed and taxed as an improvement the real property. I/We understand that if Lender does not escrow for these taxes, that I/we will be responsible for payment of such taxes.

11. If the land is being purchased, such purchase and said manufactured home represent a single real estate transaction under applicable state law.

12. Said manufactured home has been built under the Federal Manufactured Home Construction and Safety Standards that were established June 15, 1976.

13. This Affidavit is executed by Borrower(s) pursuant to applicable state law.

14. All permits required by governmental authorities have been obtained. Borrower(s) certifies that Borrower(s) is in receipt of manufacturer's recommended maintenance program regarding the carpets and manufactures warranties covering the heating/cooling system, hot water heater, range, etc. and the formaldehyde health notice.

_____ 10-8-08 _____
Borrower PHYLLIS L. MILLER   Date       Borrower                      Date

_____            _____
Borrower                      Date       Borrower                      Date

_____            _____
Borrower                      Date       Borrower                      Date

PG 0 | 2 8 JUL 29 ☺

In Witness Whereof, Borrower(s) and Lender has executed this Affidavit in my presence and in the presence of undersigned witnesses on this _8th_ day of _October 2008_ .

_____        _____
Witness                                 Witness


STATE OF <u>VIRGINIA</u>

COUNTY OF <u>AUGUSTA</u>

The foregoing instrument was acknowledged before me this _8th_ day of _October 2008_ ,
by <u>PHYLLIS L. MILLER</u>

_____ ,

who is personally known to me or who provided _drivers licence_ as identification.

_____
Notary Public

_Philip H. Miller_
Print Name

My Commission Expires: _4 30 2011_

AFFIXATION AFFIDAVIT REGARDING MANUFACTURED
(AND FACTORY BUILT) HOME
AARMFBH.MSC 11/21/07        Page 3 of 4

DocMagic eForms 800-649-1362
www.docmagic.com

PG0129 JUL 29

## LENDER'S STATEMENT OF INTENT

The undersigned ("Lender") intends that the Home be an immovable fixture and a permanent improvement to the Land.

METROCITIES MORTGAGE, LLC
Lender

By: _____
Authorized Signature    Lisa Woltz, A. V. P.

STATE OF  California        )
                            ) ss.:
COUNTY OF Los Angeles       )

On the __27th__ day of __July__ in the year __2009__ before me, the undersigned, a Notary Public in and for said State, personally appeared _____
Lisa Woltz

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

_____
Notary Signature

O.V. Padilla
Notary Printed Name

O. V. PADILLA
Commission # 1698453
Notary Public - California
Los Angeles County
My Comm. Expires Oct 10, 2010

(Official Seal)

Notary Public; State of __California__

Qualified in the County of __Los Angeles__

My Commission Expires: __10/10/10__

Drafted By: Metrocities Mortgage, LLC

AFFIXATION AFFIDAVIT REGARDING MANUFACTURED
(AND FACTORY BUILT) HOME
AARMFBH.MSC 11/21/07              Page 4 of 4

DocMagic eForms 800-649-1362
www.docmagic.com

PG0130 JUL 29 2

Record and Return ☐ by Mail ☐ by Pickup to:
METROCITIES MORTGAGE, LLC
15301 VENTURA BLVD, SUITE D300
SHERMAN OAKS, CALIFORNIA 91403

Loan Number: █████████

# REAL PROPERTY AND MANUFACTURED HOME
# LIMITED POWER OF ATTORNEY

(To execute or release title, mortgage or deed of trust, security filing, transfer of equity and insurance documents and proceeds.)

The undersigned borrower(s), whether one or more, each referred to below as "I" or "me," residing at:

3520 COLD SPRINGS ROAD
_____ ,
Street Address

GREENVILLE, VIRGINIA 24440
_____ ("Present Address").
City, State, Zip, County

I am the Buyer/Owner of the following manufactured home (the "Manufactured Home"):

USED                1984              Colonial Homes Inc
New/Used            Year             Manufacturer's Name

Unknown      CHI 1467 A&B           23.8' x 40.2'
Model Name/Model No.   Manufacturer's Serial No.   Length/Width

permanently affixed to the real property located at 3520 COLD SPRINGS ROAD, GREENVILLE,
Street Address

VIRGINIA 24440
_____ ("Property Address") and as more
City, County, State, Zip

particularly described on Exhibit A attached hereto (the "Real Property"). I do hereby irrevocably make, constitute, appoint and authorize with full power of substitution, METROCITIES MORTGAGE, LLC

("Lender"), its successors, assigns or designees as my agent and attorney-in-fact, in my name, place and stead in any way which I could do, If I were personally present, with full power of substitution and delegation, (1) to complete, execute and deliver, in my name or Lender's name, any and all forms, certificates, assignments, designations, releases or other documentation as may be necessary or proper to implement the terms and provisions of the Security Instrument dated OCTOBER 8, 2008    executed by me in favor of Lender, (2) to complete, execute and deliver, in my name or in Lender's name, any and all forms, certificates, assignments, designations, releases or other documentation as may be necessary or proper to make application for and obtain the certificate of title for the Manufactured Home and to have Lender (or its designee) designated as lienholder on the certificate of title for the Manufactured Home, (3) to complete, execute and deliver in my name or Lender's name, any and all forms, certificates, assignments, designations, releases or other documentation as may be necessary or proper to have the

REAL PROPERTY AND MANUFACTURED HOME LIMITED POWER OF ATTORNEY
01/29/07                                  Page 1 of 4                    DocMagic *eForms* 800-649-1362
www.docmagic.com

PG 0 1 3 1   JUL 29 08

Manufactured Home treated as real estate for any and all purposes under state law, including but not limited to the surrender of any certificate of title, any election to treat the Manufactured Home as real estate for tax purposes or to meet any other requirements in order for the loan/financing secured by the Manufactured Home and the Real Property to be eligible for sale on the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Association ("Freddie Mac") or any other secondary market purchaser, (4) to receive, complete, execute or endorse, and deliver in my name or Lender's name any and all claim forms, agreements, assignments, releases, checks, drafts or other instruments and vehicles for the payment of money, relating to any insurance covering the Manufactured Home, the indebtedness secured by the Manufactured Home or the Real Property, and (5) to complete, sign and file, without my signature, such financing and continuation statements, amendments, and supplements thereto, mortgages, deeds of trust and other documents, including releases of these items, which I may from time to time deem necessary to perfect, preserve and protect Lender's security interest in the Manufactured Home, the Property and any other property sold with it. I acknowledge that at the time this Power of Attorney and my Security Instrument and any of the forms, certificates, assignments, designations, releases or other documentation are prepared the serial number of the manufactured housing unit may not be available or may be inaccurate. The manufactured housing unit may be a factory order in the process of being constructed. Immediately, upon Lender's receipt of the serial number, I understand and agree that the above items may be completed and/or corrected by Lender to properly disclose all the applicable home identifications, including the serial number. I understand that I will be provided with a copy of any corrected agreement.

To induce any third party to act hereunder, I hereby agree that any third party receiving a duly executed copy of facsimile of this instrument may act hereunder, and I for myself and for my heirs, executors, legal representatives and assigns, hereby agree to indemnify and hold harmless any such third party from and against any and all claims that may arise against such third party by reason of such third party having relied on the provisions of this instrument. I have given this Limited Power of Attorney in connection with a loan/financing to be given by Lender and to induce Lender to make the financing available. It is coupled with an interest in the transaction and is irrevocable. This Limited Power of Attorney shall not be affected by my/our subsequent incapacity, disability, or incompetence. I do further grant unto Lender full authority and power to do and perform any and all acts necessary or incident to the execution of the powers herein expressly granted, as fully as I might or could do if personally present.

WITNESS my hand and seal this _8th_ day of _October_, _2008_

---

Witness

Witness

---

Borrower  PHYLLIS L. MILLER   Date _10 8 08_

Borrower                          Date

---

Borrower                          Date

Borrower                          Date

---

Borrower                          Date

Borrower                          Date

---

DocMagic *eForms* 800-649-1362
www.docmagic.com

PG0132 JUL 29 23

STATE OF VIRGINIA )
) ss.:
COUNTY OF AUGUSTA )

On the *8th* day of *October* in the year *2008* before me, the undersigned, a Notary Public in and for said State, personally appeared PHYLLIS L. MILLER

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

Notary Signature

Notary Printed Name

Notary Public; State of *Virginia*

Qualified in the County of *Augusta*

My Commission Expires: *4-30-2011*

(Official Seal)

DocMagic *eForms* 800-649-1362
www.docmagic.com

PG0133 JUL 29 93

## EXHIBIT A

### PROPERTY DESCRIPTION

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF
A.P.N.: 089-83D

PG0134 JUL 29 5

## Schedule A

## Description
## Tax Map #89-83d

**Phyllis L. Miller**
**3520 Cold Springs Road**
**Greenville, VA 24440**

**All that certain lot or parcel of land, together with all buildings and improvements thereon and all rights, privileges and appurtenances thereunto belonging, or in anywise appertaining, lying and being in the Riverheads District of Augusta County, Virginia, described and designated as LOT 1 containing 0.836 acre as more particularly shown on "Plat of a Division of the David Michael Johnson Property, Riverheads Dist., Augusta Co., VA.," dated October 24, 2007, made by EGS & Associates, Inc., recorded in the Clerk's Office of the Circuit Court of Augusta County, Virginia, as Instrument No. 070014726;**

INSTRUMENT #090008093
RECORDED IN THE CLERK'S OFFICE OF
AUGUSTA COUNTY ON
JULY 29, 2009 AT 11:47AM

JOHN B. DAVIS, CLERK
RECORDED BY: APB

140000505

PG0008 JAN 24

Assessor's/Tax ID No. 089-83D
Recording Requested By:
OCWEN LOAN SERVICING, LLC

When Recorded Return To:

WANDA MANCHESTER
OCWEN LOAN SERVICING LLC
3451 HAMMOND AVENUE
WATERLOO, IA 50702

## *CORRECTIVE
### CORPORATE ASSIGNMENT OF DEED OF TRUST

Augusta, Virginia
**SELLER'S SERVICIN**          **MILLER"**

**MERS**

Date of Assignment: January 21st, 2014
Assignor: Mortgage Electronic Registration Systems, Inc. as nominee for METROCITIES MORTGAGE, LLC ITS
SUCCESSORS AND/OR ASSIGNS at POBOX 2026 FLINT MI 48501, 1901 E VOORHEES ST. STE C,
DANVILLE, IL 61834
Assignee: OCWEN LOAN SERVICING, LLC at 1661 WORTHINGTON ROAD, STE 100, WEST PALM BEACH, FL
33409

Executed By: PHYLLIS L. MILLER To: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), SOLELY
AS NOMINEE FOR LENDER, METROCITIES MORTGAGE, LLC ITS SUCCESSORS AND/OR ASSIGNS
Trustee: RHEA & MILLER, P.C. Date of Deed of Trust: 10/08/2008 Recorded: 10/09/2008 in Book/Reel/Liber: N/A
Page/Folio: 0063 as Instrument No.: 080009865 ReRecorded 07/29/2009 in Book/Reel/Liber: N/A Page/Folio: 113
as Instrument No.: 090008093 In Augusta County, State of Virginia.

Property Address: 3520 COLD SPRINGS ROAD, GREENVILLE, VA 24440

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of
Trust having an original principal sum of $104,961.00 with interest, secured thereby, with all moneys now owing or
that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the
covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee,
the Assignor's interest under the Deed of Trust.

   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to
the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the
day and year first above written:
  Mortgage Electronic Registration Systems, Inc. as nominee for METROCITIES MORTGAGE, LLC ITS
SUCCESSORS AND/OR ASSIGNS
On *1-22-2014*

*Being recorded to correct the Assignment that recorded
12/11/2013, Instrument No. 130010977, Page 27 to
Include the Mortgage Re-recorded reference

By: *Wanda Manchester*
Wanda Manchester, Assistant Secretary

STATE OF Iowa
COUNTY OF Black Hawk

On *1-22-14* before me, TERESA OLSON, a Notary Public in and for Black Hawk in the State of Iowa,
personally appeared Wanda Manchester, Assistant Secretary being duly sworn of MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. AS NOMINEE FOR METROCITIES MORTGAGE, LLC ITS SUCCESSO,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

*Teresa Olson*
TERESA OLSON
Notary Expires: 07/03/2016 #779238

> TERESA OLSON
> COMMISSION NO.779238
> MY COMMISSION EXPIRES
> JULY 3, 2016

(This area for notarial seal)

Prepared By: Wanda Manchester, OCWEN LOAN SERVICING, LLC 3451 HAMMOND AVENUE, PO BOX 780, WATERLOO,
IA 50704-0780 1-800-766-4622 *Wanda Manchester*

```
INSTRUMENT #140000505
RECORDED IN THE CLERK'S OFFICE OF
AUGUSTA COUNTY ON
JANUARY 24, 2014 AT 11:16AM

JOHN B. DAVIS, CLERK
RECORDED BY: SCS
```

I30UI0977                                              PG0027 DEC 11 2

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

## Assignment of Deed of Trust

Dated: December 5, 2013

For value received **Mortgage Electronic Registration Systems, Inc., as nominee for Metrocities Mortgage, LLC, A Limited Liability Company, its successors and assigns** the undersigned hereby grants, assigns and transfers to **Ocwen Loan Servicing, LLC, 1100 Virginia Drive, Suite 175, Fort Washington, PA 19034,** all beneficial interest under a certain Deed of Trust dated **October 8, 2008** executed by **PHYLLIS L MILLER** and recorded in Book **XX** on Page(s) **XX** as Document Number **080009865** on October 9, 2008 in the office of the County Clerk of Augusta County, Virginia.

MORTGAGE AMOUNT: **$104,961.00**

Mortgage Electronic Registration Systems, Inc., as
nominee for Metrocities Mortgage, LLC, A Limited
Liability Company, its successors and assigns

By: _Curtis Michael Leason_

**Curtis Michael Leason,**
**Assistant Secretary**

STATE OF **Minnesota**                    )

COUNTY  **Ramsey**                         ) SS

On **December 5, 2013** before me, **Mary Xiong** , **Notary Public** in and for said State personally appeared **Curtis Michael Leason** , **Assistant Secretary** of **Mortgage Electronic Registration Systems, Inc.**, personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that s/he executed the same in his/her authorized capacity, and that by his/her signature on the instrument the entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

Instrument Prepared By:
Matt Marsh
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

**Mary Xiong, Notary Public**
My Commission expires **January 31, 2016**

MARY XIONG
Notary Public-Minnesota
My Commission Expires Jan 31, 2016

INSTRUMENT #I30010977
RECORDED IN THE CLERK'S OFFICE OF
AUGUSTA COUNTY ON
DECEMBER 11, 2013 AT 11:05AM

JOHN E. DAVIS, CLERK
RECORDED BY: SCS

Page 1

MRG

FILED

MAY 31 2019

STATE TREASURER

## CERTIFICATE OF MERGER

### OF

### OCWEN LOAN SERVICING, LLC
(a Delaware limited liability company)

### WITH AND INTO

### PHH MORTGAGE CORPORATION
(a New Jersey corporation)

Pursuant to Section 14A of the New Jersey Business Corporation Act, the domestic business corporation and the other business entity hereinafter named do hereby submit the following Certificate of Merger.

1.    The names of the parties to the merger herein certified (the "*Merger*") are PHH Mortgage Corporation, a corporation organized and existing under the laws of the State of New Jersey (the "*Company*"), and Ocwen Loan Servicing, LLC, a limited liability company formed and existing under the laws of the State of Delaware (the "*Merging Entity*").

2.    Annexed hereto and made a part hereof is the Agreement and Plan of Merger, dated May 2, 2019, between the Company and the Merging Entity for merging the Merging Entity with and into the Company, with the Company as the surviving corporation, as approved by the Board of Directors and the sole shareholder of the Company and the Board of Managers of the Merging Entity.

3.    The name of the surviving corporation shall be PHH Mortgage Corporation.

4.    The Certificate of Incorporation of the Company, which is the surviving corporation, shall continue in full force and effect as the Certificate of Incorporation of the surviving corporation.

5.    The number of shares of the Company entitled to vote at the time of the approval of the Agreement and Plan of Merger by its sole shareholder was 1,000, all of which were of one class. On May 1, 2019, the Company's sole shareholder approved the Agreement and Plan of Merger pursuant to a written consent.

6.    On February 11, 2019, the Board of Managers of the Merging Entity approved the Agreement and Plan of Merger pursuant to a written consent.

7.    The applicable provisions of the laws of the jurisdiction of formation of the Merging Entity relating to the merger of the Merging Entity with and into the Company will have been complied with upon compliance with any of the filing and recording requirements thereof.

8.    The Company will continue its existence as the surviving corporation under its present name pursuant to the provisions of the laws of its jurisdiction of organization.

9.    The effective date of the merger herein provided for in the State of New Jersey shall be 12:01 a.m. Eastern Time on June 1, 2019.

*[Signature Page Follows]*

- 2 -

**IN WITNESS WHEREOF**, the undersigned have executed and acknowledged this Certificate of Merger as of May __30__, 2019.

**OCWEN LOAN SERVICING, LLC**

By: _____
Name: Arthur C. Walker, Jr.
Title: Senior Vice President

**PHH MORTGAGE CORPORATION**

By: _____
Name: Alberino Celini
Title: Vice President

*[ Signature Page to Certificate of Merger – Owen Loan Servicing, LLC ]*

<u>**Annex A**</u>

**Agreement and Plan of Merger**

[See attached.]

*Execution Version*

### AGREEMENT AND PLAN OF MERGER

THIS AGREEMENT AND PLAN OF MERGER (the "*Merger Agreement*") is entered into as of May 2, 2019 by and between Ocwen Loan Servicing, LLC, a Delaware limited liability company ("*OLS*"), and PHH Mortgage Corporation, a New Jersey corporation ("*PMC*"). OLS and PMC are collectively referred to herein as the "*Parties*" and each, individually, as a "*Party*."

### WITNESSETH:

WHEREAS, OLS is a limited liability company duly organized and existing under the laws of the State of Delaware;

WHEREAS, PMC is a corporation duly organized and existing under the laws of the State of New Jersey;

WHEREAS, the Board of Managers of OLS and the Board of Directors of PMC have each determined that it is advisable and in the best interests of said entities and their respective member and stockholder that OLS merge with and into PMC, with PMC as the surviving entity (the "*Merger*"), upon the terms and conditions of this Merger Agreement; and

WHEREAS, the Parties have both adopted the OMS-PMC Plan of Reorganization and intend for this Merger to occur pursuant to the overall Transactions laid out in the OMS-PMC Plan of Reorganization, that, when taken together, are intended to be and will be treated as a tax-free reorganization under section 368(a)(1) of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder.

NOW, THEREFORE, BE IT RESOLVED, in consideration of the mutual agreements and covenants set forth herein, OLS and PMC hereby agree as follows:

1.    Authorization. The execution and delivery of this Merger Agreement by OLS and the consummation by OLS of the transactions contemplated hereby have been authorized and approved by the Board of Managers of OLS, and the execution and delivery of this Merger Agreement by PMC and the consummation by PMC of the transactions contemplated hereby have been authorized and approved by each of the Board of Directors of PMC and by the sole stockholder of PMC.

2.    The Merger. The effective time (the "*Effective Time*") of the Merger shall be the later of (A) 12:01 a.m. Eastern Time on June 1, 2019, or (B) upon the filing of the applicable Certificate of Merger with the Secretary of State of the State of Delaware and the applicable Certificate of Merger with the New Jersey Division of Revenue. At the Effective Time, OLS shall, pursuant to the New Jersey Business Corporation Act and the Delaware Limited Liability Company Act, be merged with and into PMC and PMC shall be the surviving corporation (and shall sometimes hereinafter be referred to as the "surviving corporation") and shall continue to exist as said surviving corporation under its present name pursuant to the provisions of the New Jersey Business Corporation Act. From and after the Effective Time, all real and personal property, tangible and intangible, of every kind and description, and all the rights, privileges, immunities, powers, purposes, franchises, licenses and authority of OLS shall vest in PMC as the surviving corporation, and all debts, liabilities, obligations, restrictions and duties of OLS shall become the debts, liabilities, obligations, restrictions and duties of PMC as the surviving corporation. Neither the rights of creditors nor any liens upon, or security interests in, the property of either PMC or OLS shall be impaired by the Merger. The separate existence of OLS shall cease at the Effective Time in accordance with the laws of the State of Delaware.

3.      Governing Documents.

(a)     Certificate of Incorporation.  The Certificate of Incorporation of PMC as in force and effect at the Effective Time shall be the Certificate of Incorporation of the surviving corporation and shall continue in full force and effect until amended in the manner prescribed therein or by the New Jersey Business Corporation Act.

(b)     Bylaws.  The Bylaws of PMC as in force and effect at the Effective Time shall be the Bylaws of the surviving corporation and shall continue in full force and effect until amended in the manner prescribed therein or by the New Jersey Business Corporation Act.

4.      Directors and Officers.   The directors and officers of the surviving corporation in office at the Effective Time shall be the members of the first Board of Directors and the first officers of the surviving corporation, all of whom shall hold their directorships and offices until the election and qualification of their respective successors or until their tenure is otherwise terminated in accordance with the bylaws of the surviving corporation

5.      OLS Membership Interests.   The outstanding and existing limited liability company interests in OLS shall, at the Effective Time, be cancelled and retired and cease to exist, and no consideration shall be delivered in exchange therefor.

6.      PMC Shares.  The issued and outstanding shares of capital stock of PMC shall not be converted or exchanged in any manner, or be entitled to the payment or delivery of any consideration in exchange therefor, but each said share which is issued and outstanding as of the Effective Time shall continue to represent one issued and outstanding share of the surviving corporation.

7.      Miscellaneous.

(a)     Assignment; Binding Effect.   This Merger Agreement and the rights and obligations of the Parties hereunder may not be assigned by either Party without the prior written consent of the other Party hereto.  This Merger Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors, heirs, executors, administrators, legal representatives and assigns.

(b)     Amendment; Waiver.  Prior to the Effective Time, any amendment hereto shall be effective only if signed by all Parties hereto.  No waiver of any provisions of this Merger Agreement shall be valid unless in writing and signed by the party against whom enforcement is sought.

(c)     Governing Law.  This Merger Agreement, the rights and obligations of the Parties hereto, and any claims or disputes relating thereto, shall be governed by and construed in accordance with the laws of the State of New Jersey, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof.

(d)     Tax-Treatment.  In accordance with the OMS-PMC Plan of Reorganization, the Parties hereby agree that the Merger is intended to be and will be treated as by both Parties as a tax-free reorganization under section 368(a)(1) of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder.

(e)     Severability.  In the event that any provision of this Merger Agreement shall be invalid or unenforceable in any respect, such provision shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining provisions of this Agreement.

(f)      Further Assurances.  The Board of Managers and proper officers of OLS and the Board of Directors and proper officers of PMC are hereby authorized, empowered, and directed to do any and all acts and things, and to make, execute, deliver, file and/or record any and all instruments, papers, and documents which shall be or become necessary, proper, or convenient to carry out or put into effect any of the provisions of this Merger Agreement or of the Merger herein provided for.

(g)      Counterparts.  This Merger Agreement may be executed by the Parties hereto in counterparts (including by facsimile or PDF), each of which when so executed and delivered will be deemed an original and all of which shall constitute one and the same instrument.  Signatures delivered by facsimile or other electronic transmission (such as e-mail in PDF format) shall have the same force and effect as manual signatures delivered in person.

(h)      Recordkeeping.  PMC shall maintain this Merger Agreement on file at the its principal place of business.  PMC shall furnish a copy of this Merger Agreement, on request and without cost, to any member of OLS in accordance with the Delaware Limited Liability Company Act.

(i)      Termination.  This Merger Agreement may be terminated and the Merger may be abandoned at any time prior to the Effective Time by action of either party hereto. If this Merger Agreement is terminated pursuant to this Section 7(i), this Agreement shall become void and of no effect with no liability on the part of either Party hereto.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the Parties have executed this Merger Agreement as of the date first
above written.

OCWEN LOAN SERVICING, LLC,
a Delaware limited liability company

By: _____
Name:    Arthur C. Walker, Jr.
Title:    Senior Vice President

Signed in: _St. Croix, USVI_

PHH MORTGAGE CORPORATION,
a New Jersey corporation

By: _____
Name:    Leah E. Hutton
Title:    Assistant Secretary

Signed in: _St. Croix, USVI_

*Execution Version*

## AMENDMENT AGREEMENT TO "AGREEMENT AND PLAN OF MERGER"

THIS AMENDMENT AGREEMENT (the "*Amendment Agreement*") is entered into as of May 29, 2019 by and between Ocwen Loan Servicing, LLC, a Delaware limited liability company ("*OLS*"), and PHH Mortgage Corporation, a New Jersey corporation ("*PMC*"). OLS and PMC are collectively referred to herein as the "*Parties*" and each, individually, as a "*Party*."

### WITNESSETH:

WHEREAS, OLS and PMC have previously entered into an Agreement and Plan of Merger dated May 2, 2019 to be effective the later of (A) 12:01 a.m. Eastern Time on June 1, 2019, or (B) upon the filing of the applicable Certificate of Merger with the Secretary of State of the State of Delaware and the applicable Certificate of Merger with the New Jersey Division of Revenue;

WHEREAS, the Parties have both adopted the OMS-PMC Plan of Reorganization and intend for this Merger to occur pursuant to the overall Transactions laid out in the OMS-PMC Plan of Reorganization, that, when taken together, are intended to be and will be treated as a tax-free reorganization under section 368(a)(1) of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder; and

WHEREAS, OLS and PMC have each determined that it is advisable and in the best interests of said entities that the following the terms and conditions of be included in the Merger Agreement.

NOW, THEREFORE, BE IT RESOLVED, in consideration of the mutual agreements and covenants set forth herein, OLS and PMC hereby agree to add the following terms to section 7 of the May 2, 2019 Agreement and Plan of Merger as follows:

(i) <u>Title Passage</u>. Title to all assets and liabilities transferred in this Agreement, whether directly or indirectly, shall be deemed and treated by both parties to pass in the United States Virgin Islands.

(k) <u>US Tax Treatment and Timing of Deemed Shares</u>. The Agreement does not contemplate any actual transfer of stock between the Parties, but shares may be deemed to be issued for U.S. Federal income tax purposes. For the avoidance of any doubt, both parties agree and will treat any shares that are deemed to be issued to be distributed and/or contributed (in any additional deemed transactions) as of the Effective Time (as defined herein) to result in the deemed ownership of shares to be consistent with actual ownership as of the Effective Time.

FURTHER RESOLVED, all other terms of the Merger Agreement, including the Effective Time, are hereby expressly affirmed.

*[Signature Page Follows]*

**IN WITNESS WHEREOF**, the Parties have executed this Amendment Agreement as of the date first above written.

OCWEN LOAN SERVICING, LLC,

a Delaware limited liability company


By: _____

Name:    Arthur C. Walker, Jr.

Title:    Senior Vice President


Signed in: _____


PHH MORTGAGE CORPORATION,

a New Jersey corporation


By: _____

Name:    John P. Kim

Title:    Vice President, Capital Markets


Signed in: _____


2

MIN: █████████████████

Loan Number: █████████████

# NOTE

```
FHA Case No.
████████████
```

OCTOBER 8, 2008            SHERMAN OAKS            CALIFORNIA
[Date]                       [City]                   [State]

3520 COLD SPRINGS ROAD, GREENVILLE, VIRGINIA 24440
[Property Address]

## 1. PARTIES

**"Borrower"** means each person signing at the end of this Note, and the person's successors and assigns.
**"Lender"** means METROCITIES MORTGAGE, LLC, A LIMITED LIABILITY COMPANY
(DRE # 06424)                                          and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of
ONE HUNDRED FOUR THOUSAND NINE HUNDRED SIXTY-ONE AND 00/100
Dollars (U.S. $ 104,961.00            ),
plus interest, to the order of the Lender. Interest will be charged on unpaid principal, from the date of disbursement
of the loan proceeds by Lender, at the rate of SEVEN AND 500/1000            percent
(      7.500 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated
the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from
losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning
on DECEMBER 1, 2008      . Any principal and interest remaining on the 1st      day of
NOVEMBER, 2038            , will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at 15301 VENTURA BLVD, SUITE D300, SHERMAN OAKS,
CALIFORNIA 91403
, or at such other place
as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $ 733.90      .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to
principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants
of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge
were a part of this Note.

---

VIRGINIA - FHA FIXED RATE NOTE
VAFHA.NTE 05/01/08                    Page 1 of 3                DocMagic *eForms* 800-649-1362
www.docmagic.com

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                    percent (    4.000    %) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor and waive the homestead exemption. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in

VIRGINIA - FHA FIXED RATE NOTE
VAFHA.NTE 05/01/08                    Page 2 of 3                    DocMagic *eForms* 800-649-1362
www.docmagic.com

this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_____ (Seal)
PHYLLIS L. MILLER        -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
PAY TO THE ORDER OF      -Borrower
GMAC MORTGAGE, LLC
WITHOUT RECOURSE

D. CHIODO
ASSISTANT SECRETARY
GMAC BANK

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE

J. GRAY
LIMITED SIGNING OFFICER
GMAC MORTGAGE, LLC. f/k/a
GMAC MORTGAGE CORPORATION

*[Sign Original Only]*

This is to certify that this is the Note described in and secured by a Deed of Trust dated OCTOBER 8, 2008 on the property located in   AUGUSTA                    , Virginia.



PHILIP H. MILLER
NOTARY PUBLIC
COMMONWEALTH OF VIRGINIA
ID# 107753

_____
Notary Public

My Commission expires: 4-30-2011

VIRGINIA - FHA FIXED RATE NOTE
VAFHA.NTE 05/01/08                Page 3 of 3          DocMagic eForms 800-649-1362
                                                      www.docmagic.com

Without recourse pay to the order of

**GMAC Bank**

Metrocities Mortgage, LLC
A Limited Liability Company

SUE BANGTHAMAI, AVP

1500002395

C06,19.01

After Recording Return To:
Ocwen Loan Servicing, LLC
3451 Hammond Avenue
Waterloo, IA 50702
Custodian ID: RK1

When Recorded Return To
Indecomm Global Services
292 Country Drive
St. Paul, MN 55117

When Recorded Return To:
Indecomm Global Services
2925 Country Drive
St. Paul, MN 55117

This document was prepared by Ocwen Loan Servicing, LLC

_____ [Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"): PHYLLIS L MILLER    *unmarried*
Lender\Servicer or Agent for Lender\Servicer: Ocwen Loan Servicing, LLC
Date of first lien Security Instrument ("Mortgage") and Note ("Note"): 10/8/2008   *UPD $ 104,961.00*
Loan Number: ▇▇▇▇▇▇
Property Address *[and Legal Description if recordation is necessary]* ("Property"): 3520 COLD SPRINGS
ROAD   GREENVILLE VA 24440

If my representations in Section 1 continue to be true in all material respects, then this Modification
Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the
Property, and (2) the Note secured by the Mortgage. The Note is secured by a Mortgage, Deed of Trust,
or Deed to Secure Debt (the "Security Instrument), dated the same date as the Note, and if applicable,
recorded on   with Instrument Number or in Book  and/or Page number  of the real property records of
AUGUSTA County, VA. Said Security Instrument covers the real and personal property described in such
Security Instrument (the "Property") located at 3520 COLD SPRINGS ROAD  GREENVILLE VA 24440,
which real property is more particularly described as follows.  The Mortgage and Note together, as they
may previously have been amended, are referred to as the "Loan Documents."  Capitalized terms used in
this Agreement and not defined have the meaning given to them in Loan Documents.

**(Legal Description – Attached as Exhibit if Recording Agreement)**
*089-830-Parcel  ‡‡* ▇▇▇▇▇▇▇

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

_____
If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document
words signifying the singular (such as "I") shall include the plural (such as "we) and vice versa where appropriate.

*Pre mod UPD*
*Per VA Code 58.103(c)*    *$99,424.12.*

/

1.   **My Representations.** I certify, represent to Lender and agree:

    A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.    I live in the Property as my principal residence, and the Property has not been condemned;

    C.    There has been no change in the ownership of the Property since I signed the Loan Documents;

    D.    I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for a modification of the Loan Documents);

    E.    Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct; and,

    F.    If Lender requires me to obtain credit counseling in connection with the Program, I will so; and;

    G.    I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

    H.    If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents. Based on this representation, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2.   **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

    A.    TIME IS OF THE ESSENCE under this Agreement;

    B.    If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    C.    I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.   **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 8/1/2014 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. The Loan Documents will be modified and the first modified payment will be due on 8/1/2014.

    A.    The new Maturity Date will be: 7/1/2044.

    B.    The modified Principal balance of my Note will include all amounts and arrearages that will be past due (excluding unpaid late charges) less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Note will be $75,513.51 (the "New Principal Balance").

    C.    Interest at the rate of 4.625% will begin to accrue on the New Principal Balance as of 7/1/2014 and the first new monthly payment on the New Principal Balance will be due on 8/1/2014.

My payment schedule for the modified Loan is as follows:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment Begins On | Payment Ends On |
|---|---|---|---|---|---|---|
| 4.625% | 7/1/2014 | $388.24 | $139.04, adjusts periodically | $527.28, adjusts periodically | 8/1/2014 | 7/1/2044 |

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.  **Additional Agreements.**  I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree which was recorded, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  That this agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my Escrow Account.

E.  **Funds for Escrow Items.**  I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items". I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the

*3*

Funds for any or all Escrow Items.  Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents.  If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge.  Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds.  Lender and I can agree in writing, however, that interest shall be paid on the Funds.  Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA.  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments.  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

F.   That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

G.   That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibits the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee or my property permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein. This Agreement may not, under any circumstances, be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provisions are null and void.

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in the first lien position and/or is fully enforceable upon modification and that if, under any circumstances and no withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s), and/or subordination agreement(s), then the terms of this Agreement will not become effective on Modification Effective Date and the Agreement will be null and void.

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosures of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii)Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate line (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v)any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this

5

section 4.N shall be referred to as "Documents". I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

(Seal) _____

PHYLLIS L MILLER

_____          Witness _____

Date

_____          _____

                                    Print Name

(Seal) _____

                                    Witness _____

_____          _____

Date                                Print Name

(Seal) _____

                                    Witness _____

_____          _____

Date                                Print Name

(Seal) _____

                                    Witness _____

_____          _____

Date                                Print Name

_____ [Space Below This Line For Acknowledgement] _____

**BORROWER ACKNOWLEDGMENT**

State of Virginia
County of Augusta

On this 22 day of August, 20 14, before me undersigned, a Notary Public in and for said county and state, personally appeared PHYLLIS L MILLER    , personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

_____
Notary Public
My commission Expires: 2/28/2015

6

CLARESE RAYMON WILKERSON
Notary Public
Commonwealth of Virginia
My Commission Expires February 28, 2015
Commission ID# 7507936

Ocwen Loan Servicing, LLC

By: _____ Kirk Neurith
 Authorized Officer

Date: ___8-27-14___

LENDER ACKNOWLEDGMENT

State of _IOWA_
County of _Bub Haub_

On this _27_ day of _August_, 20_14_, before me, the undersigned, a Notary Public in and for said county and state, personally appeared _Kirk Neurith_ personally known to me or identified to my satisfaction to be the person who executed the within instrument as Authorized Officer of Ocwen Loan Servicing, LLC and they duly acknowledged that said instrument is the act and deed of said entity, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.



Notary Public

My Commission Expires: _3-23-15_

NICHOLE SCHLARMANN
COMMISSION NO. 757537
MY COMMISSION EXPIRES
March 23, 2015

7

**Legal Description:**

All that certain lot or parcel of land, together with all buildings and improvements thereon and all rights, privileges and appurtenances thereunto belonging, or in anywise appertaining, lying and being in the Riverheads District of Augusta County, Virginia, described and designated as LOT 1 containing 0.836 acre as more particularly shown on "Plat of a Division of the David Michael Johnson Property, Riverheads Dist., Augusta Co., VA.," dated October 24,2007, made by EGS & Associates, Inc., recorded in the Clerk's Office of the Circuit Court of Augusta County, Virginia, as Instrument No. 070014726.

8

Certificate of Preparation

This is to certify that this instrument was prepared by Ocwen Loan Servicing, LLC, one
of the parties named in the instrument.

_Signature_

MAIDA OSMICEVIC
LOSS MITIGATION

Ocwen Loan Servicing LLC
Loss Mitigation Department
3451 Hammond Ave
Waterloo, IA 50702
1-800-850-4622



INSTRUMENT #150002395
ED IN THE CLERK'S OFFICE OF
/ AUGUSTA COUNTY ON
APRIL 14, 2015 AT 01:41PM

CAROL H. BRYDGE, CLERK
RECORDED BY: CGW

9



**EXHIBIT**

**2**

# 3520 COLD SPRINGS RD

| | | | |
|---|---|---|---|
| **Location** | 3520 COLD SPRINGS RD | **Parcel No.** | 089/ / /83 D/ |
| **Acct#** | ▮▮▮ | **Owner** | MILLER, PHYLLIS L. |
| **Assessment** | $88,000 | **PID** | 19599 |
| **Building Count** | 1 | **Legal Description** | 89-83D E SIDE RT 608 ADJ PETERS .836 ACRES |
| **District** | 05: Riverheads | | |

## Current Value

| Assessment | | | |
|---|---|---|---|
| Valuation Year | Improvements | Land | Total |
| 2021 | $48,000 | $40,000 | $88,000 |

## Parcel Addresses

| Additional Addresses |
|---|
| No Additional Addresses available for this parcel |

## Owner of Record

| | | | |
|---|---|---|---|
| **Owner** | MILLER, PHYLLIS L. | **Sale Price** | $115,000 |
| **Co-Owner** | %OCWEN LOAN SERVICING, LLC | **Recorded** | 2008 |
| **Address** | 1611 WORTHINGTON RDD | **Book & Page** | 0/0 |
| | WEST PALM BEACH, FL 33416 | **Sale Date** | 10/09/2008 |

## Ownership History

| Ownership History | | | | | |
|---|---|---|---|---|---|
| Owner | Sale Price | Recorded | Book & Page | Sale Date | Instrument No |
| MILLER, PHYLLIS L. | $115,000 | 2008 | 0/0 | 10/09/2008 | 080009864 |
| JOHNSON, DAVID MICHAEL | $0 | 0 | 822/530 | 01/01/1984 | 000000000 |
| JOHNSON, DAVID MICHAEL | $0 | 0 | 822/530 | 01/01/1984 | 000000000 |

## Building Information

**Year Built:** 1984
**Living Area:** 960

| Building Attributes | |
|---|---|
| **Field** | **Description** |
| Model | Residential |
| Style | Residential |
| Grade | Grade D |
| Grade Adjust | -0.10 |
| Stories | 1 |
| Num Units | 0 |
| Roof Type | Gable |
| Roof Cover | Comp Shingle |
| Exterior Wall 1 | Wood/Frame |
| Exterior Wall 2 | |
| Heat System | Forced Air |
| Heat Fuel | Oil |
| AC Type | FULL |
| Interior Wall 1 | Drywall |
| Interior Wall 2 | Wood Panel |
| Interior Wall 3 | |
| Interior Floor 1 | Carpet |
| Interior Floor 2 | Vinyl |
| Interior Floor 3 | Hardwood |
| Total Room(s) | 4 |
| Bedroom(s) | 2 |
| Full Bath(s) | 2 |
| Half Bath(s) | 0 |
| Extra Fixture(s) | 0 |
| Extra Kitchen(s) | 0 |
| Fireplace(s) | 0 |
| Stacked Fireplace(s) | 0 |
| Gas Fireplace(s) | 1 |
| Flue(s) | 0 |
| Metal Flue(s) | 0 |
| Inop Flue/FPL | 0 |
| Legacy Area | 960 |
| Foundation | Piers |
| Basement | Crawl |
| Fin Bsmt Area | 0 |

**Building Photo**



(https://images.vgsi.com/photos/AugustaVAPhotos//\P032\0032603_01_01

**Building Layout**



(ParcelSketch.ashx?pid=19599&bid=19599)

| Building Sub-Areas (sq ft) | | | Legend |
|---|---|---|---|
| **Code** | **Description** | **Gross Area** | **Living Area** |
| FFL | First Floor | 960 | 960 |
| DECK | Deck | 264 | 0 |
| | | 1,224 | 960 |

| FBM Quality | |
|---|---|
| Num Cars - Built In | 0 |
| Garage Type | None |
| Num Cars - Garage | 0 |
| Carport Type | None |
| Num Cars - Carport | 0 |
| Garage Type 2 | |
| Num Cars - Garage 2 | 0 |
| Split Foyer | No |
| Split Level | No |

## Extra Features

| Extra Features | Legend |
|---|---|
| No Data for Extra Features | |

## Land

### Land Line Valuation

lbllndfront

**Size (Acres)**  1
**Assessed Value**  $40,000

## Outbuildings

| Outbuildings | | | | | | Legend |
|---|---|---|---|---|---|---|
| Code | Description | Sub Code | Sub Description | Size | Assessed Value | Bldg # |
| SHED | Shed | VN | Vinyl | 1.00 UNITS | $1,500 | 1 |

## Valuation History

| Assessment | | | |
|---|---|---|---|
| Valuation Year | Improvements | Land | Total |
| 2023 | $48,000 | $40,000 | $88,000 |
| 2022 | $48,000 | $40,000 | $88,000 |
| 2021 | $48,000 | $40,000 | $88,000 |

(c) 2023 Vision Government Solutions, Inc. All rights reserved.